David TAVES, Respondent,

v.

Gene GRIEBEL, et al., Appellants,

Rex International, Inc., Defendant.

No. C6–84–1713.

Court of Appeals of Minnesota.

Feb. 12, 1985.

Carl E. Malmstrom, Paul Thorwaldsen, Wilson, Thorwaldsen & Shoemaker, Detroit Lakes, for respondent.

Wayne A. Pokorny, Pokorny & Erickson, Excelsior, for appellants.

Considered and decided by WOZNIAK, P.J., and PARKER, and HUSPENI, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

Griebel appeals from a summary judgment entered in favor of Taves. Griebel claims that Taves was not a holder in due course of three checks drawn by Griebel but completed contrary to his instructions by Ryan. The court held that Taves was a holder in due course. We affirm.

## FACTS

The facts are not in dispute. John Ryan owed David Taves approximately $18,500. Taves loaned money to Ryan for various real estate and farming projects over a period extending from spring of 1981 until fall of 1982. The loans were made informally, on handshakes rather than promissory notes. In partial payment of the debt, Ryan delivered three checks to Taves as payee as follows:

| | |
|---|---|
| 10/23/81 | $ 1,500 |
| 10/30/81 | $ 1,500 |
| 11/12/82 | $10,000 |

The checks were drawn by Gene Griebel on two business accounts, Rex International, Inc. and Nicollet County Land Co., Inc. Griebel was another individual involved in financing Ryan's business projects. Griebel had authority to sign these checks. He delivered them to Ryan without having filled in the payee or the amount, but with instructions to pay the salary for a Rex employee and to pay rent on some farmland. Ryan's delivery to Taves was contrary to instructions.

Griebel stopped payment on each of the three checks. Taves never asked Ryan why the two 1981 checks had been dishonored. After the $10,000 check did not clear in 1982, Taves called Griebel directly to ask why payment was stopped. This was their first contact. Before that time, Ryan told Taves that Griebel was his business partner on a farming project. Once, in October 1982, a $5,000 check from Taves to Ryan had been endorsed and deposited into Griebel's account.

Taves claimed that he was entitled to payment on the three checks because he had the status of a holder in due course. The trial court granted his motion for summary judgment.

## ISSUE

Was Taves a holder in due course of the checks signed by Griebel?

## ANALYSIS

A holder in due course (HDC) takes an instrument:

(a) for value; and

(b) in good faith; and

(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

Minn.Stat. § 336.3–302(1) (1982). It is conceded that Taves took the checks for value. Griebel contends that Taves does not meet the latter two conditions of HDC status.

*Good Faith*

■ "Good faith" is a subjective rather than an objective determination. Minn. Stat. § 336.1–201(19) (Uniform Commercial Code Comment). The issue is honesty of intent rather than diligence or negligence.

Some term it the 'white heart, empty head' test. It is not sufficient that there

be circumstances or suspicions such as would put a careful purchaser upon inquiry. We have traditionally held that subjective good faith is simply 'the honest belief that [your] conduct is rightful.' [Citations omitted]

*Wohlrabe v. Pownell*, 307 N.W.2d 478, 483 (Minn.1981).

Griebel claims that Taves lacked honesty of intent because he accepted checks drawn on corporate accounts in payment of his loans and because the second two checks were accepted following a stop payment order by the same drawer. These facts do not impugn Taves' good faith.

■ Taves never learned of Ryan's dishonesty until after speaking with Griebel. The evidence clearly showed that he blindly trusted Ryan. While the loans were outstanding, Taves conducted other business with Ryan on the assumption that he would eventually be repaid. Ryan told Taves that the loans were for the Rex hotel and for a farming project; Taves was not dishonest in accepting repayment from those corporate sources. He believed that he acted properly. His conduct was consistent with his testimony. There are no facts from which to infer that Taves lacked good faith.

*Notice*

■ A person has notice of a fact when:

(a) he has actual knowledge of it; or

(b) he has received a notice or notification of it; or

(c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists.

Minn.Stat. § 336.1–201(25) (1982). There was no actual or communicated notice to Taves that Ryan was not authorized to make him payee. Griebel contends that the first stop payment order, standing alone, gives notice that something was amiss. Failure to inquire why payment is stopped may be negligence and lack of diligence, but it is not "notice" of what he might discover. *See Eldon's Super Fresh Stores, Inc. v. Merrill Lynch, Pierce Fenner & Smith, Inc.*, 296 Minn. 130, 138, 207 N.W.2d 282, 288 (1973). Since the law does not impose a duty on the holder to discover why a check has been dishonored, a failure to inquire may not be construed as notice.

■ Griebel also claims that the third-party check itself was notice to Taves; that Taves should have contacted Ryan upon receipt of the check and made a full inquiry as to the agreements or understandings between Ryan and Griebel and the two corporations, and that Taves had no right to assume that Ryan was acting properly. This precise matter was taken up by *Eldon's*. In that case, attorney Drexler was not authorized to make a personal stock purchase from Merrill Lynch with a check drawn on Eldon's. The court explained:

> The fact that Merrill Lynch was the named payee on the check drawn by Eldon's did not in and of itself constitute 'notice' that Drexler was using the check improperly. Significantly, there were no other identification or designation marks on the check to indicate or give notice that it was drawn in payment for stock for Eldon's. * * * Merrill Lynch was entitled to conclude that Drexler, known to be an attorney, had lawfully obtained and was delivering the instrument to discharge the debt incurred by his own stock purchase. Merrill Lynch was not required to surmise that the check, rather than being a payment for Drexler's legal services, was being misused.

*Id.* at 139, 207 N.W.2d at 288. In the present case, Griebel entrusted checks payable in blank to Ryan without imposing any limitations on check faces whatsoever. Taves had been conducting business with Ryan under the assumption that he was honest. Nothing suggested to Taves that the checks were misused.

■ Griebel also contends that Taves was on notice that the checks were incomplete and that Ryan was a corporate fiduciary negotiating a private debt. See Minn. Stat. § 336.3–304(1), (2) (1982). No facts support these claims.

### DECISION

Courts are often confronted with the obligation of applying rules to determine which of two relatively innocent persons must suffer a loss due to misconduct of a third person. The instant case is such a situation. The Minnesota cases dealing with situations such as the one at bar have indicated that the loss must fall on the drawer rather than upon the payee (or other holder) because it was the drawer who created the situation and opportunity for defalcation by its agents.

*Eldon's* at 139–140, 207 N.W.2d at 289.

Taves took the checks in good faith. He was not on notice that the checks were misused. Griebel continued to give checks payable in blank to Ryan after he became aware that Ryan was misusing them. Taves was a holder in due course.

We affirm.